**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**NAM DANG,**

       **Plaintiff,**

**v.**                                                       **Case No:   6:14-cv-37-Orl-31TBS**

**SHERIFF OF SEMINOLE COUNTY,
FLORIDA, OLUGBENGA
OGUNSANWO, SANDRA WILT,
BRENDA PRESTON-MAYLE, ALECIA
SCOTT, SHARYLE ROBERTS and
MARTHA DENSMORE,**

       **Defendants.**

## ORDER

This matter is before the Court on the Defendants Densmore, Roberts, and Scott's Motion to Dismiss (Doc. 52), Defendant Sheriff of Seminole County's ("Sheriff") Motion to Dismiss (Doc. 53), and Defendants Wilt and Preston-Mayle's Motion to Dismiss (Doc. 54) as well as the Plaintiff's response to Densmore, Roberts, Scott, and the Sheriff's Motions (Doc. 59) and response to Wilt and Preston-Mayle's Motion (Doc. 58).

### I.   Background

The Plaintiff, Nam Dang,[1] asserts that during the twenty-nine days he was in custody of the Seminole County Sheriff he was suffering from meningitis and that the Defendants failed to provide sufficient medical care.[2] Ultimately, the Plaintiff suffered from multiple, sever brain infarctions

---

[1] The Amended Complaint is brought by Vina Dang, under a power of attorney.

[2] The factual allegations of the Amended Complaint are assumed to be true for purpose of this Order.

(strokes), which resulted in permanent brain damage causing severe problems with cognition and communication. The Plaintiff asserts that the Sheriff and medical staff that attended to him during his detention deprived him of his constitutional right to receive necessary medical care and that he is entitled to relief pursuant to 42 U.S.C. § 1983 ("§ 1983").

The Plaintiff's account of his illness begins when he was arrested on January 26, 2012. At that time, the Plaintiff's mother told the arresting officers that he was sick. He was subsequently taken to the John E. Polk Correctional Facility in Seminole County. For the first few days of the Plaintiff's pretrial detention he was feeling ill, but was alert and coherent. On the fourth day he saw Defendant Wilt due to a "nurse sick call" during which he reported moderate to severe head and neck pain. He saw Defendant Wilt the next day and again reported worsening conditions. On the following day he saw Doctor Ogunsanwo,[3] who found that the Plaintiff was running a fever. The Amended Complaint charts out the subsequent days that the Plaintiff was in custody, chronicling worsening symptoms and alleging various visits by individual defendants up to the point where the Plaintiff's symptoms became so severe that he was transported to a hospital. Upon admittance to the hospital, the Plaintiff was almost immediately diagnosed with meningitis and began to receive treatment for the disease. However, the damage had been done, and the Plaintiff is now left with permanent impairment.

Defendants Densmore, Roberts, Scott, Wilt, and Preston-Mayle (the "Nurse Defendants") argue that the claims against them should be dismissed because they did not have subjective knowledge that the Plaintiff had meningitis and even if they did, their acts do not constitute deliberate indifference. They also claim entitlement to qualified immunity. The Sheriff's Motion

---

[3] Defendant Ogunsanwo has not moved to dismiss the Amended Complaint, instead he has filed an answer. (Doc. 55).

asserts that the Plaintiff has failed to assert a policy, custom, or practice that led to the alleged harm and that there was no underlying constitutional violation.

## II.     Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**III. Analysis**

   **A. Nurse Defendants**

      **1. § 1983 Claim**

A claim for relief under § 1983 requires that the Plaintiff allege a "deprivation of an actual constitutional right." *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). "It is well settled that the deliberate indifference to serious medical needs of prisoners" constitutes a violation of the Eighth Amendment.[4] *Id.* (internal citations omitted). Therefore, to establish a claim in this context under § 1983, the Plaintiff must allege (1) a serious medical need, (2) deliberate indifference to that need by the Defendants, and (3) a causal connection between Defendant's deliberate indifference and Plaintiff's injuries. *See Hatten v. Prison Health Services, Inc.*, 2006 WL 4792785 (M.D. Fla. Sept. 13, 2006).

         **a. Serious Medical Need**

There can be little doubt that the Plaintiff presented a serious medical need.

> In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In either of these situations, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotes and citations omitted); *see also Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988) (noting that where some medical

---

[4] The Amended Complaint asserts claims under the Fourteenth Amendment, which is appropriate for pretrial detainees. However, in this context the Eighth and Fourteenth Amendment standards are the same. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (noting that Fourteenth Amendment Due Process Clause governs pretrial detainees in custody but holding that the Eighth and Fourteenth Amendment standards are applied the same); *Smith v. Vavoulis*, 373 F. App'x 965, 966 (11th Cir. 2010) (same, addressing standards in context of excessive force claim).

care was provided but diagnosis was incorrect and worsening symptoms were ignored, serious medical need could have been found by jury).

From at least the fourth day in custody the Plaintiff was experiencing severe and increasing neck and back pain which ultimately lead to minimal neck rotation, bouts of unconsciousness, and fever. (Doc. 47 ¶¶ 18-44). On the fifth day, Defendant Wilt recognized the need for a physician. After that the Plaintiff's symptoms continued to worsen over a considerable period of time and became so bad that he eventually ended up in a wheelchair, nonverbal, passed out, drooling, and sliding to the floor. (*Id.* ¶¶ 18-46, 96). Accordingly, the allegations of the Amended Complaint clearly establish that the Plaintiff presented a serious medical need.

### b. Deliberate Indifference

In *Farmer v. Brennan* the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining the meaning of "deliberate indifference" to a risk of harm to an inmate). The Eleventh Circuit has taken this to mean that deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *see Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) ("claim of deliberate indifference requires proof of more than gross negligence"); *Farrow*, 320 F.3d at 1246-47 ("This substantial and inordinate delay in treatment raises a jury question as to [the defendant physician's] deliberate indifference towards [the plaintiff's] serious medical need." (internal quotations and citations omitted)).

### 1. Subjective Knowledge of Risk

The allegations of the Complaint also paint a compelling portrait of deliberate indifference to the Plaintiff's risk of serious harm. The Nurse Defendants who regularly attended to the Plaintiff over a period of weeks were well aware of his declining health.[5] (*See* Doc. 47 ¶ 49 (noting that all Nurse Defendants "ignored worsening signs and symptoms of a serious medical condition" between January 26, 2012 to February 23, 2012). During his twenty-nine days at the jail, the Plaintiff repeatedly complained of headache and neck pain. He developed a fever on his seventh day and his condition continued to worsen to the point that he became virtually comatose. Thus, the Plaintiff has adequately pled that the nurse Defendants had subjective knowledge of the Plaintiff's serious medical condition.

### 2. Disregard of Risk by Conduct Exceeding Gross Negligence

It is clear that the Nurse Defendants (and Dr. Ogunsanwo) disregarded the Plaintiff's need for medical treatment. Over the prolonged course of his confinement, it appears Plaintiff was seen by a doctor only once and the Defendants' response to his illness was to put him on muscle relaxants and return him to the general jail population. There appears to have been no meaningful effort to diagnose his problem; opting instead to simply watch his condition deteriorate. On the fifteenth day of his confinement, eight days after fever onset, the Plaintiff was running a temperature of 101.5°F.[6]

---

[5] Defendants Wilt and Preston-Mayle attempt to rely on documentary evidence to demonstrate that the Plaintiff told them an ulterior reason that he was experiencing pain—in other words these documents purport to demonstrate a lack of subjective knowledge of serious medical need because they believed Dang's complaints were caused by a physical altercation. (Doc. 54 at 5 n.1, 11 n.3, and 12 n.4). These fact arguments in footnotes are not appropriate for a motion to dismiss. The exhibits will not be considered, they are a part of a factual dispute, and should accordingly be addressed at summary judgment.

[6] It is general medical knowledge that fever suggests infection, and it requires medical attention if it lasts more than three days. *See, e.g.,* Fever: First aid, Mayo Clinic (Apr. 17, 2012), *available at* http://www.mayoclinic.org/first-aid/first-aid-fever/basics/art-20056685 (*When to Seek*

(Doc. 47 ¶ 28). On the twenty-seventh day, Roberts responded to an emergency medical alert and observed Plaintiff in a wheelchair, passed out and sliding to the floor. (*Id.* ¶ 36). In response, Roberts wrote it up as an attempt to fake unconsciousness. (*Id.*) On February 22, 2012, the twenty-eighth day, Densmore noted that Plaintiff could not sit up and was still running a fever. (*Id.* ¶ 38). Nevertheless, he was left in the general population to be attended to by untrained corrections personnel. (*Id.* ¶ 39). Finally, on February 23, 2012, when Plaintiff became lethargic, unresponsive, and unable to communicate, he was taken to Central Florida Regional Hospital, where he was diagnosed as suffering from cryptococcal meningitis.

By any measure this conduct is more than gross negligence. As pled, this conduct constitutes deliberate indifference to a serious medical need, which is actionable under § 1983.

### c. Causal Connection

The Plaintiff's meningitis was allowed to go undiagnosed and untreated for twenty-nine days while he languished at the Seminole County Jail. When he was finally hospitalized, and proper treatment begun, it was too late to avoid permanent impairment. Since meningitis is a condition that must be aggressively treated as soon as possible (Doc. 47 ¶ 50), the delay in seeking proper treatment for Plaintiff satisfies the casual connection prong of deliberate indifference claim.

### 2. Qualified Immunity

The Nurse Defendants assert that they were acting within the scope of their discretionary duties and are entitled to qualified immunity. In order to overcome immunity, Plaintiff must show that the Defendants violated a clearly established constitutional right. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157-58 (11th Cir. 2010) (to lose entitlement to qualified immunity, a plaintiff must

---

*Medical Help* section notes that adults should seek medical help if a fever lasts for more than three days).

show that a "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation"). Deliberate indifference to the serious medical need of a prisoner is the violation of such a right. *See McElligott*, 182 F.3d at 1254. The Nurse Defendants are not entitled to qualified immunity.

### B.  Defendant Seminole County Sheriff

There is no vicarious liability under § 1983. Thus, to hold the Sheriff liable for a violation of the Plaintiff's constitutional rights, there must be conduct attributable to the chief policy maker that caused the alleged constitutional deprivation. This may be established in one of three ways: 1) conduct by the policy maker him or herself; 2) an express policy promulgated by the policy maker; or 3) an implied policy from a custom or practice that is sufficiently persistent from which to infer the imprimatur of the policy maker. *See Engelleiter v. Brevard County Sheriff's Dept.*, 290 F. Supp. 2d 1300, 1309 (M.D. Fla. 2003).

For obvious reasons, most failure to train claims under § 1983 rely on an implied policy from a custom or practice. *See Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (noting that officially adopted policies are rare and most § 1983 plaintiffs must show custom or practice). Typically, to show a custom or practice a plaintiff must allege prior, similar incidents of harm that would put the government on notice of the need to train. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (noting that courts typically require notice of need to train through prior similar instances). But here, there are no allegations of prior instances from which a policy of medical neglect can be inferred. Instead, Plaintiff relies on allegations that the lack of meaningful health care training of jail personnel was reckless and created an obvious risk that the constitutional right to adequate medical care would be violated.

In *City of Canton, Ohio v. Harris* the Supreme Court said:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Opinions by other judges of this Court have followed suit. *See Hargis v. City of Orlando, Fla.*, 6:12-CV-723-ORL-37, 2013 WL 451406 at *2-3 (M.D. Fla. Feb. 6, 2013) (finding allegations of obvious need for training sufficient to survive motion to dismiss); *c.f. Degraw v. Gualtieri*, 8:11-CV-720-EAK-MAP, 2013 WL 6002837 at *6-7 (M.D. Fla. Nov. 12, 2013) (denying partial summary judgment on municipal § 1983 liability on basis that policy based on budgetary concerns that permitted psychotic detainee to go unevaluated for up to fourteen days raised jury question).

This is such a case. It is alleged that the lack of suitable training and staffing of medical personnel at the jail was the result of deliberate cost-cutting efforts by the Sheriff. (Doc. 47 ¶¶ 57-70). Accordingly, the allegations of the Amended Complaint are sufficient to sustain a § 1983 claim against the Sheriff.

It is, therefore,

**ORDERED,** the Motions to Dismiss (Docs. 52, 53, and 54) are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 6, 2014.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party